UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL M. KAHR,

        Plaintiff,

  v.                                                                 Case No. 13-C-1005

MICHAEL E. COLE and
IRON WORKS CONSTRUCTION CO. LLC,

        Defendants.

## DECISION AND ORDER

Plaintiff Michael Kahr brought this action against Defendants Michael Cole and Iron Works Construction Co. LLC contending that several of Defendants' dock structures infringe various claims of a patent owned by Plaintiff, U.S. Patent No. 8,348,554 (the "'554 Patent"). After a three day trial, the jury returned a verdict of infringement under the doctrine of equivalents and awarded Plaintiff a total royalty of $50,000.00. Defendants' have filed two post-trial motions arguing the Court should set aside the jury's verdict and enter judgment as a matter of law pursuant to Rule 50(a), or alternatively, enter judgment of noninfringement as a matter of law pursuant to the ensnarement defense. (ECF Nos. 95 and 110.) For the reasons below, I find that the asserted scope of equivalency ensnares the prior art. Accordingly, Defendants' motion for judgment of noninfringement as a matter of law based on the ensnarement defense is granted.

**BACKGROUND**

**A. The Proceedings**

Plaintiff designs and constructs permanent dock structures primarily for residents in northeastern Wisconsin. His company, Death's Door Marine, Inc., is located in Sister Bay, Wisconsin and competes directly with Iron Works Construction Company, LLC, owned by Cole. On September 6, 2013, Plaintiff sued Defendants accusing them of infringing Claims 1–4, 6, and 7 of his '554 Patent. The central dispute in this case is whether the accused docks infringe under the doctrine of equivalents. After a three day jury trial in August 2016, the jury found that Defendants' dock structures infringed on the asserted claims of the '554 patent, that Defendants willfully infringed, that Iron Works induced Cole to infringe, and that $50,000.00 would fairly compensate Plaintiff for Defendants' infringement as a reasonable royalty.

**B. The '554 Patent**

The '554 Patent describes the design for interlocking and adjustable concrete dock segments and the methods of manufacturing and constructing such assemblies. Specifically, the patent "relates to a dock structure that has enhanced integrity against the elements, and against the freeze-thaw cycles experienced in northern climates." ('554 Patent, col. 1 ll. 14–17, ECF No. 112-1.)

Plaintiff claims Defendants infringed Claims 1–4, 6, and 7 of the '554 Patent. Claim 1 reads as follows:

> A dock structure for use with vertical pilings, the structure comprising: a first end and a second end, a pair of opposing side walls, a pair of opposing end walls, one end wall disposed at each end of the structure, and a floor; wherein the side walls, the end walls and the floor form a cavity; a pair of cylindrical rims forming a vertically-disposed cylindrical opening in the floor and each opening being functionally adapted to receive a piling through it; and a pair of overlapping members formed at the second end of the structure; wherein each overlapping member has an aperture

formed in it for receiving a fastener; and wherein each cylindrical rim and that portion of the side wall adjacent the rim has an aperture formed in it for receiving a fastener.

('554 Patent, ECF No. 112-1.) Claims 2 and 3 are dependent upon Claim 1. Claim 2 states, "The dock structure of claim 1 further comprising at least one reinforcement member extending between the opposing side walls." (*Id.*) Claim 3 reads, "The dock structure of claim 1 wherein the cavity is filled with concrete." (*Id.*) Claim 4, an independent claim, states:

> A dock assembly for use with a plurality of vertical pilings, the assembly comprising: at least one dock element, the element comprising a pan-like structure having a first end and a second end, a pair of opposing side walls, a pair of opposing end walls, one end wall disposed at each end of the element, and a floor; wherein the side walls, the end walls and the floor form a cavity within the element; a pair of cylindrical rims disposed at the first end of the dock element, each rim forming a vertically-disposed cylindrical opening in the floor of the element and each opening being functionally adapted to receive a piling through it; and a pair of overlapping members formed at the second end of the dock element; wherein each overlapping member has an aperture formed in it for receiving a fastener; and wherein each cylindrical rim and that portion of the side wall adjacent the rim has an aperture formed in it for receiving a fastener.

(*Id.*) Claims 6 and 7 are dependent upon Claim 4. Claim 6 reads, "The dock assembly of claim 4 further comprising at least one reinforcement member extending between the opposing side walls of the dock element." (*Id.*) Finally, Claim 7 states, "The dock assembly of claim 4 wherein the cavity of the pan-like structure of each element is filled with concrete." (*Id.*)

Claim 1 and Claim 4, originally Claim 5 in Plaintiff's patent application, were initially rejected by an Examiner at the U.S. Patent and Trademark Office under 35 U.S.C. § 103 as being obvious over U.S. Patent 3,964,221 (the "Berquist Patent"). Plaintiff amended these claims by including the words "wherein each overlapping member has an aperture formed in it for receiving a fastener; and wherein each cylindrical rim and that portion of the side wall adjacent the rim has an aperture formed in it for receiving a fastener." (ECF No. 112-14.) This language clarified that the use and method

3

of a fastener allowed the height of the dock structure to be adjustable, a feature that was not present in the Berquist invention. After the Examiner received Plaintiff's claim amendments and remarks, he granted the '554 Patent on January 8, 2013.

**C. The Accused Docks**

The primary difference between the '554 Patent docks and the accused docks is the connection mechanism. The '554 Patent describes a dock structure, dock assembly, and dock constructing method for a permanent dock structure that is attached to vertical pilings. The patented structure permits multiple dock segments to be connected to create the desired length and straight, "T-shaped," or "L-shaped" configurations. ('554 Patent, ECF No. 112-1.) Each dock segments' side and end walls, and a floor form a cavity which is filled with concrete after the structure is assembled. Each dock segment also has two cylindrical openings through which the vertical pilings pass, and each segment overlaps with the next. Each segment's side walls and cylindrical rims contain apertures, or holes. The holes allow a single fastener to both secure a set of dock segments together and fasten the dock assembly to the pilings. (*Id.*)

Specifically, each dock segment has a pair of cylindrical rims at the first end through which a piling passes. The second end of an adjacent dock segment overlaps with this section of the first end of the next dock segment. The holes through which the fasteners are intended to pass are in the overlapping members on the side walls adjacent to the cylindrical openings of the second end and the cylindrical openings on the first end. Although the claims do not expressly state, Figure 6 below shows that a pin or bolt fastener is inserted through the hole in the overlapping member of one dock segment through the holes in the sidewall and one side of the cylindrical opening, the piling, and then the other side of the cylindrical opening before the pin is capped.

4



('554 Patent, fig. 6, ECF No. 112-1.) In short, a single fastener not only holds the dock segments together but also attaches the dock to the piles.

While the accused docks have many of the features claimed in the '554 patent, they use a different connection mechanism. As depicted in Image 1 below, because the accused docks do not have a hole in the dock segment's side wall, the accused docks cannot use a single fastener to connect the dock segments and attach the dock to the piles. Instead, the accused docks use two connection mechanisms—one fastening the dock segments together and another attaching the dock to the pilings.



(Tr. Ex. 1035, at 3.)

5

**ANALYSIS**

Defendants argue that judgment as a matter of law on all of Plaintiff's claims is proper because the undisputed evidence at trial, viewed in the light most favorable to Plaintiff, does not provide a reasonable jury with legally sufficient evidence to support the verdict. Defendants also assert that the '554 Patent's scope of equivalency ensnares prior art and that the Court should enter judgment of non-infringement as a matter of law. For the reasons discussed below, I find that the asserted scope of equivalency ensnares the prior art. I therefore decline to address Defendant's alternative arguments.

**I. The Ensnarement Defense Standard**

If a patentee invokes the doctrine of equivalents as a theory of infringement, the alleged infringer may assert the ensnarement defense, one of the various "legal limitations" on the doctrine of equivalents. *DePuy Spine, Inc. v. Medtroni Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009). Under the ensnarement defense, there can be no infringement if the scope of the equivalency would cover what is considered prior art. *Intendis GMBH v. Glenmark Pharm. Inc., USA*, 822 F.3d 1355, 1363 (Fed. Cir. 2016). "[A] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims." *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684 (Fed. Cir. 1990), *overruled in part on other grounds*, *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993). As such, "ensnarement bars a patentee from asserting a scope of equivalency that would encompass, or 'ensnare,' the prior art." *DePuy Spine*, 567 F.3d at 1322. Because prior art always limits what an inventor could have claimed, it also "limits the range of permissible equivalents of a claim." *Wilson Sporting Goods*, 904 F.2d at 684. The application of the ensnarement defense is decided by

6

the court, "either on a partial motion for summary judgment or a motion for judgment as a matter of law at the close of evidence and after the jury verdict." *DePuy Spine*, 567 F.3d at 1324 (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 36, 39 n.8 (1997)).

To determine whether the patent would ensnare the alleged equivalent, courts generally engage in the two-step hypothetical claim analysis. *DePuy Spine*, 567 F.3d at 1324 (citing *Ultra–Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000)). The accused infringer has the burden of producing evidence of prior art to challenge a hypothetical claim. *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001) (citing *Streamfeeder, LLC v. Sure–Feed, Inc.*, 175 F.3d 974, 984 (Fed. Cir. 1999)). Then the burden shifts to the patentee to prove the patentability of the hypothetical claim. *Id.* However, this burden does not undermine the presumed validity of the plaintiff's actual patent claims. *Wilson Sporting Goods*, 904 F.2d at 685. The plaintiff's claims will remain valid whether or not he is entitled to the range of equivalents sought in the case. *Id.*

Under the hypothetical claim analysis, the parties must first "construct a hypothetical claim that literally covers the accused device." *DePuy Spine*, 567 F.3d at 1324. Second, the court assesses the prior art introduced by the accused infringer to "determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art." *Id.* at 1325. Ultimately, if the hypothetical claim would be unpatentable under 35 U.S.C. § 102, anticipation, or 35 U.S.C. § 103, obviousness, then "the accused device will be held noninfringing as a matter of law." *Interactive Pictures*, 274 F.3d at 1380.

In other words, courts determine whether a hypothetical claim containing both the literal claim scope and the accused device can be crafted without ensnaring the prior art. *Intendis GMBH*,

7

822 F.3d at 1363. If the hypothetical claim would not be patentable in light of the prior art, the accused product does not infringe the patent as a matter of law because the patent's scope would improperly ensnare the prior art. *Wilson Sporting Goods*, 904 F.2d at 684. However, if the patentee proves that the hypothetical claim is patentable over the prior art, the patent would not be found to ensnare the prior art. *Id.* As such, the accused product would infringe the patent under the doctrine of equivalents. *Id.*

**II. The Hypothetical Claim**

Again, the first step of the ensnarement analysis is to construct a hypothetical claim that literally covers the accused device. *DePuy Spine*, 567 F.3d at 1324. Plaintiff asserts infringement under the doctrine of equivalents of Claims 1–4, 6, and 7. Thus, a relevant hypothetical claim derived from Claim 1 of the '554 Patent would appear as follows (with a strike-through indicating a deletion and italics emphasizing additions):

> A dock structure for use with vertical pilings, the structure comprising:
>
>> a first end and a second end, a pair of opposing side walls, a pair of opposing end walls, one end wall disposed at each end of the structure, and a floor;
>>
>> wherein the side walls, the end walls, and the floor form a cavity;
>>
>> a pair of cylindrical rims disposed at the first end of the structure, each rim forming a vertically disposed cylindrical opening in the floor and each opening being functionally adapted to receive a piling through it; ~~and~~
>>
>> a pair of overlapping members formed at the second end of the structure; ***and***
>>
>> ***an extended end plate at the first end***;
>>
>> wherein each overlapping member has an aperture formed in it for receiving a fastener; and

8

> wherein each cylindrical rim ~~and that portion of the side wall adjacent the rim~~ ***and the extended end plate*** has an aperture formed in it for receiving a fastener.

Claims 2 and 3 are dependent upon Claim 1 and require no changes. A hypothetical claim based on Claim 4, a claim that discloses the elements of dock assembly rather than the dock structure, would read:

> A dock assembly for use with a plurality of vertical pilings, the assembly comprising:
>
> > at least one dock element, the element comprising a pan-like structure having a first end and a second end, a pair of opposing side walls, a pair of opposing end walls, one end wall disposed at each end of the element, and a floor;
> >
> > wherein the side walls, the end walls and the floor form a cavity within the element;
> >
> > a pair of cylindrical rims disposed at the first end of the dock element, each rim forming a vertically-disposed cylindrical opening in the floor of the element and each opening being functionally adapted to receive a piling through it; ~~and~~
> >
> > a pair of overlapping members formed at the second end of the dock element; ***and***
> >
> > ***an extended end plate at the first end;***
> >
> > wherein each overlapping member has an aperture formed in it for receiving a fastener; and
> >
> > wherein each cylindrical rim ~~and that portion of the side wall adjacent the rim~~ ***and the extended end plate*** has an aperture formed in it for receiving a fastener.

Claims 6 and 7 are dependent upon Claim 4 and do not require any changes. With this hypothetical claim in mind, the Court turns to whether the hypothetical claim is patentable.

### III. Patentability of Hypothetical Claim

After the hypothetical claim is created, the court must "assess the prior art introduced by the accused infringer and determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art." *DePuy Spine*, 567 F.3d at 1325 (citing *Interactive Pictures*, 274 F.3d at 1380). Defendants contend that Plaintiff could not have patented a hypothetical claim covering the accused docks because such a claim would have been anticipated or rendered obvious by two prior art references: Max Burns, THE DOCK MANUAL (1999) and the Berquist patent, U.S. Patent No. 3,964,221.

### A. Anticipation Analysis

A patent is anticipated if it "was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent." 35 U.S.C. § 102(b). Anticipation is a question of fact, and the challenger of the patent's validity has the burden of proving anticipation by clear and convicing evidence. *See Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004); *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010). For a claim to be anticipated, a single prior art reference must disclose each and every limitation either expressly or inherently. *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377, 1379 (Fed. Cir. 2003). "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing feature is necessarily present, or inherent, in the single anticipating reference." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005) (quoting *Schering Corp.*, 339 F.3d at 1377); *see also Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005) ("Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claims

10

limitations, it anticipates."); *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1366 (Fed. Cir. 1999) ("Where . . . the result is a necessary consequence of what was deliberately intended, it is of no import that the article's authors did not appreciate the results."). An anticipating reference must be "enabling; that is, the description must be such that a person of ordinary skill in the field of the invention can practice the subject matter based on the reference, without undue experimentation." *Sanofi–Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008).

Plaintiff claims Defendants did not meet their production burden because they did not point to one structure that encompasses every claim of the '554 Patent to demonstrate that the '554 Patent was anticipated. Plaintiff contends that the '554 Patent was issued due to the combination of its different components along with its unique connection method. However, Defendants were not pointing to prior art to illustrate that the '554 Patent was anticipated. Instead, they produced prior art in an attempt to show that the accused docks were anticipated and obvious.

Defendants contend that the hypothetical claim is unpatentable by anticipation in light of a book written by Max Burns, THE DOCK MANUAL. This book is part of the prior art because it was published in 1999. THE DOCK MANUAL describes every aspect of dock construction: designing, building, and maintaining. Like the hypothetical claim, the book teaches of a permanent piling dock, a "heavy-weight, long-term version of the pipe dock." (Burns, *supra* at 56, ECF No. 112-10.)



11

(Burns, *supra* at 57, ECF No. 112-10 (illustration of a permanent piling dock) [hereinafter Image 2].) It also discusses the elements of a pipe dock.



(Burns, *supra* at 47, ECF No. 112-10 (illustration of a pipe dock) [hereinafter Image 3].)

I find that THE DOCK MANUAL does not disclose each and every limitation of the hypothetical claim, either expressly or inherently. Defendants heavily rely on the depictions of the pipe dock in Image 3 to suggest that the book describes every element in the hypothetical claim. For instance, Image 3 illustrates a first and second end of a dock segment, a pair of opposing side walls and end walls at each end of the structure, a floor, as well as a cavity. It also depicts a cylindrical rim at the end of the structure. *Id.* Each rim forms a cylindrical opening in the floor through which a pipe can be received. *Id.* While the piling dock is the "heavy-weight, long-term version of the pipe dock," (Burns, *supra* at 56, ECF No. 112-10), the Court cannot infer that the elements in the pipe dock are anticipated as elements of the piling dock. Accordingly, Defendants have not met their burden to present ample evidence illustrating that the hypothetical claim was anticipated by prior art.

**B. Obviousness Analysis**

Defendants claim that even if the hypothetical claim was not anticipated by THE DOCK MANUAL, it is obvious in light of the prior art. A patent is invalid as obvious "if the differences

12

between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Obviousness is a question of law based on the following underlying factual determinations: "(1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966)). "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 1727, 1739 (2007).

However, the "predictable result" refers not only to the expectation that elements of the prior art are "capable of being physically combined but also that the combination would have worked for its intended purpose." *DePuy Spine*, 567 F.3d at 1326 (citation omitted). As such, the combination of elements is obvious "when a patent 'simply arranges old elements with each *performing the same function* it had been known to perform' and yields no more than one would expect from such an arrangement." *KSR*, 550 U.S. at 1740 (quoting *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 282 (1976)). On the other hand, an invention is not obvious "if the prior art indicated that the invention would not have worked for its intended purpose or otherwise taught away from the invention." *DePuy Spine*, 567 F.3d at 1326. Obviousness must be assessed at the time the invention was made, and the court must avoid engaging in hindsight analysis. *In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d 1063, 1073 (Fed. Cir. 2012) (citation omitted).

13

A patent challenger may assert that a patent is obvious because a person of ordinary skill in the art could have combined several prior art references to arrive at the claimed invention. *DePuy Spine*, 567 F.3d at 1324. In *DePuy Spine*, the defendant, accused of infringing various claims of a patent for a spinal implant device, argued that the hypothetical claim would have been obvious in light of two patents, referred to as the Puno and Anderson Patents. *Id.* The hypothetical claim reflected the defendant's use of a receiver member with a "conically-shaped" portion, creating a rigid screw, rather than the patented receiver member's "spherically-shaped" portion. *Id.* at 1320. The Puno Patent contained all of the hypothetical claim elements except for the "compression member," which was used to press the screw head against the receiver member. *Id.* at 1325. The defendant relied on the Anderson Patent, which did contain a compression member, to fill the gaps left by the Puno Patent. *Id.* At the ensnarement hearing, when asked whether a person of ordinary skill would combine the Anderson and Puno Patents to achieve the screw covered by the hypothetical claim, the plaintiff's expert answered, "I think so." *Id.* at 1326. The defendant argued that this combination of patents, along with the expert's testimony, was sufficient to render the hypothetical claim obvious. *Id.* Conversely, the plaintiff argued that the Puno Patent actually undermined the defendant's obviousness argument because it "taught away" from the defendant's use of a rigid screw. *Id.* at 1326.

The district court denied the defendant's ensnarement defense and held that the combination of patents was not predictable under the prior art. *Id.* at 1326. The Federal Circuit affirmed the district court's decision, agreeing that the Puno Patent did not just express a preference for one type of screw but warned against using a rigid screw in the exact way the defendant did. *Id.* at 1327. Accordingly, the court found that a person of ordinary skill in the art would have been deterred from

14

combining the patents in the way the defendant suggested, and ultimately concluded that the hypothetical claim did not ensnare the prior art. *Id.*

Here, Defendants produced two references, the Berquist Patent and THE DOCK MANUAL, in combination with testimony from Kahr and David Wentland, Plaintiff's expert witness, that they believe render the hypothetical claim obvious. As the Berquist Patent pertains to Hypothetical Claims 1 and 4, the patent discloses a dock structure comprising first and second ends, a pair of opposing sidewalls, and a floor; wherein the end walls, the sidewalls, and the floor form a cavity. (Berquist Patent, fig. 4, ECF No. 112-11.) As previously noted, Images 2 and 3 of THE DOCK MANUAL portray ends of a dock segment, opposing side walls and end walls, a floor, and a cavity. (Burns, *supra* at 47–48, ECF No. 112-10.) The Berquist Patent and THE DOCK MANUAL also depicts a pair of cylindrical rims at the first end of the structure and a cylindrical opening in the floor which are designated to receive posts. (Berquist Patent, figs. 4–5, ECF No. 112-11; Burns, *supra* at 47, ECF No. 112-10.) Plaintiff agreed at the trial that docks built before the '554 Patent incorporated sleeves to receive pilings. (Kahr Tr. Test. 162:9–11, ECF No. 103.) The Berquist Patent contains overlapping members including a top and bottom surface. (Berquist Patent, fig. 8, ECF No. 112-11.)

However, the Berquist Patent does not contain the last three elements of Hypothetical Claims 1 and 4, the elements describing the accused docks' connection mechanisms. Instead, Defendants rely on THE DOCK MANUAL and admissions of Plaintiff and his expert witness to show that these elements of Hypothetical Claims 1 and 4 are obvious. The book depicts a hinge with an extended end plate capable of receiving a fastener.

15



(Burns, *supra* at 81, ECF No. 112-10 [hereinafter Image 4].) When asked on cross-examination at the trial whether docks constructed before Plaintiff's and Defendants' docks used a double-ear connection, that is, a connection mechanism where plates are welded to both dock segments to receive a connector, Wentland agreed that he had seen it on floating docks. (Wentland Tr. Test. 337:12–15, 339:20–22, ECF No. 104.) Defendants' also refer to Wentland's deposition where he was asked whether he had seen docks that incorporated a connection mechanism like that in the accused docks or where two plates were either bolted or pinned together. Wentland answered, "Absolutely." (Wentland Dep. 67:6–16, ECF No. 112-8.) Finally, Defendants rely on Image 4 as well as a cylindrical rim and alternative bracket (Image 5 below) found in THE DOCK MANUAL to illustrate an aperture in a cylindrical rim and end plate capable of receiving a fastener.



16

(Burns, *supra* at 48, ECF No. 112-10 [hereinafter Image 5].) Both Plaintiff and Wentland agreed on cross-examination that prior to Plaintiff's invention, docks used pins to hold the dock to the pilings. (Kahr Test. Tr. 162:5–8, ECF No. 103; Wentland Test. Tr. 333:20–23, ECF No. 104.)

As to Hypothetical Claims 2 and 6, the Berquist Patent depicts grooves that function to reinforce the top and bottom of the dock. (Berquist Patent, Fig. 4–5, ECF No. 112-11.) THE DOCK MANUAL further explains that "[s]teel reinforcement should be placed before the concrete is poured." (Burns, *supra* at 96, ECF No. 112-10.) Finally, regarding Hypothetical Claims 3 and 7, THE DOCK MANUAL indicates that the framing materials for piling docks are "usually metal or wood, while the decking can be of wood, metal, concrete, or plastic." (Burns, *supra* at 58, ECF No. 112-10.) It explains that "[c]oncrete will flow into all sorts of shapes and sizes, just like molten plastic or metal. This opens up a Pandora's box of potential curves and angles — anything is possible as long as the form can be built." (Burns, *supra* at 75, ECF No. 112-10.) The book notes that "[f]orms hold the concrete in place until it sets." (Burns, *supra* at 96, ECF No. 112-10.) Defendants contend that this information is sufficient to render all of the hypothetical claims obvious.

Plaintiff asserts that Defendants did not retain an expert witness to proffer an opinion that the combination of elements embodied in the '554 Patent was obvious. (Br. in Opp. at 6, ECF No. 113.) Again, Defendants contend that the hypothetical claim, not the '554 Patent, is obvious. Moreover, in a case where the technology is easily understandable and the content of prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, the determination of obviousness may include "recourse to logic, judgment, and common sense, in lieu of expert testimony." *Wyers*, 616 F.3d at 1239 (citing *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009); *Ball Aerosol & Specialty Container, Inc. v. Limited Brands,*

17

*Inc.*, 555 F.3d 984, 993 (Fed. Cir. 2009)). Here, because the disclosures from the prior art were "easily discernable from their drawings and written descriptions, no testimony, expert or otherwise, regarding their scope or content" is required. *See Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 (Fed. Cir. 1983). Therefore, Defendants were not required to produce their own expert to illicit testimony regarding the obviousness of the hypothetical claim.

Defendants' presentation of prior art combined with the testimony of Plaintiff and Wentland satisfied their burden to produce evidence that challenges the hypothetical claim. Defendants produced evidence that all of the hypothetical claims' limitations were well-known in the art. Although THE DOCK MANUAL does not describe one dock that contains every element, the book in its entirety does disclose every limitation of the hypothetical claim. Further, the book describes various methods of designing, building, and maintaining a dock. A builder can pick and choose any combination of features to create the structure. Defendants contend that every element discussed in the book in relation to the accused docks does what it has always done and yields predictable results. This is sufficient to meet Defendants' production burden.

Once the defendant satisfies his production burden, the burden shifts to the patentee to prove the patentability of the hypothetical claim. *Interactive Pictures*, 274 F.3d at 1380. However, unlike the plaintiff in *DePuy Spine*, Plaintiff did not discuss the prior art in relation to the hypothetical claim or challenge Defendants' assertion that the predictable consequences of combining the features in THE DOCK MANUAL—or the aggregate of the elements of the Berquist Patent, THE DOCK MANUAL, and the trial testimony—render the hypothetical claim obvious. Instead, Plaintiff attests that the '554 Patent was a unique combination of elements never seen before. (Br. in Opp. at 7, ECF No. 113.) Because Plaintiff did little to show that the hypothetical claim was patentable, he has failed to satisfy

18

his ultimate burden. Having failed to meet that burden, the range of equivalents for his patent cannot be extended so as to result in infringement by Defendants' docks. Accordingly, the hypothetical claim is unpatentable because it is obvious.

## CONCLUSION

Therefore, Defendants' motion for judgment of noninfringement as a matter of law (ECF No. 110) is **GRANTED**. Defendants' motion for judgment as a matter of law pursuant to Rule 50(a) (ECF No. 95) is **DENIED** as moot. This case is dismissed. The Clerk is directed to enter judgment for Defendants.

**SO ORDERED** this  18th  day of November, 2016.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court